1

2

3

4

5                     UNITED STATES DISTRICT COURT

6                     NORTHERN DISTRICT OF CALIFORNIA

7

8   HOD CARRIERS LOCAL 166 PENSION              No. C-14-3132 EMC
    TRUST FUND, *et al.*,
9
                 Plaintiffs,                     **ORDER GRANTING PLAINTIFFS'**
10                                               **MOTION FOR DEFAULT JUDGMENT**
          v.
11                                               **(Docket No. 17)**
    JAMES ISLAND PLASTERING, INC., *et al.*,
12
                 Defendants.
13  _____/

14

15

16        Plaintiffs are fiduciaries for the following trust funds:  the HOD Carriers Local 166 Pension

17  Trust Fund; HOD Carriers Local 166 Pension Trust Fund; HOD Carriers Local 166 West Bay

18  Pension Trust Fund; HOD Carriers Local 166 Health, Welfare and Vacation Trust Fund; HOD

19  Carriers Local 166 Industry Promotion Fund; and HOD Carriers Local Union No. 166 (collectively,

20  the "Trust Funds").  Plaintiff Samuel Robinson is the Trustee of each of the above-listed Trust

21  Funds.  The Trust Funds are all employee benefit plans pursuant to the Employee Retirement

22  Income Security Act ("ERISA").[1]  *See* Docket No. 1 (Complaint).  The Trust Funds filed this lawsuit

23  against Defendants James Island Plastering, Inc. and Irving G. James (the President and CEO of

24  James Island) asserting claims pursuant to ERISA and the Labor Management Relations Act

25  ("LMRA").[2]

26

27        _____

          [1] Codified at 29 U.S.C. § 1132, *et seq.*
28
          [2] Codified at 29 U.S.C. § 185, *et seq.*

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    After Defendants failed to respond to the Trust Funds' complaint, the clerk of this court

2    entered default against the Defendants on August 26, 2014. *See* Docket No. 13. Trust Funds

3    thereafter moved this Court for entry default judgment. *See* Docket No. 17. A hearing was held on

4    February 19, 2015. Docket No. 21. At the hearing, Plaintiffs were directed to file a supplemental

5    brief on the issue of whether Defendant Irving James should be held personally liable for James

6    Island Plastering's outstanding contributions. *Id.* Trust Funds filed their supplemental brief on

7    February 26, 2015. Docket No. 22. Having considered the Plaintiffs' briefs and accompanying

8    submissions, the Court hereby **GRANTS** the motion for default judgment against both Defendants.

9    ## I.   FACTUAL & PROCEDURAL BACKGROUND

10   On March 31, 2003, James Island signed a Letter of Assent with the HOD Carriers Union

11   Local No. 36[3] and the Plastering Contractors Association of San Francisco and San Mateo

12   Counties.[4] Docket No. 17 (Martinez Decl., Ex. A) (Letter of Assent). Irving James signed the letter

13   on behalf of James Island as its President and CEO. *Id.* Under the Letter of Assent, Defendants

14   agreed to comply with "all of the provisions, terms and conditions" set forth in the HOD Carriers

15   Local Union No. 36 Collective Bargaining Agreement (CBA).[5] *Id.*; *see also* Docket No. 1 (Exhibit

16   A) (CBA). Defendants further agreed to be bound to the terms of "any subsequent [CBAs]

17   negotiated and executed by the Union and the Association." Letter of Assent.

18   As relevant here, the CBA provides that James Island must pay certain fringe benefit

19   contributions to the Trust Funds pursuant to the "HOD Carriers Local Union 166 Health, Welfare

20   and Vacation Trust Agreement." CBA at 15-16; *see also* Docket No. 17 (Martinez Decl., Ex. B)

21   (Trust Agreement). The CBA also provides that "Any Employer who fails to pay contributions shall

22   be personally liable under the Agreement for benefits due his employees." CBA at 16.

23   _____

24   [3] According to the Trust Funds, HOD Carriers Local 36 "merged into [Plaintiff] HOD
25   Carriers Local 166 in 2008." Docket No. 17 at 4 n. 2.

26   [4] The Plastering Contractors Association of San Francisco and San Mateo Counties has since
     "merged into the Wall and Ceiling Alliance [(WACA)]," which is the "successor employer
27   association" to the Plastering Contractors Association. Docket No. 22-2 at 2 n.1.

28   [5] Defendant also agreed to be bound by any future modifications, changes, amendments,
     supplements, extensions, or renewals of the Master Agreement. *Id.*

United States District Court

For the Northern District of California

The Trust Agreements for the Trust Funds contains provisions that require Defendants to: (1) make fringe benefits payments in a timely manner, *see, e.g.*, Trust Agreement, Section 3; (2) pay liquidated damages for any delinquent contributions, *see, e.g.*, Trust Agreement, Section 6; (3) pay interest on sums owing under the CBA, *see e.g.*, Trust Agreement, Section 9; (4) pay the Trustee's reasonable attorneys' fees and costs if a collection action is brought, *see, e.g.*, Trust Agreement, Section 8; and (4) submit to an audit so that the Trust Funds may determine whether the employer is making full and prompt payment of all contributions owed. *See, e.g.*, Trust Agreement, Section 7.

James Island provided the Trust Funds with employee time records for the months of October 2012, November 2012, January 2013, March 2013, and April 2013. Docket No. 17 at 7; Martinez Decl., Ex. D (Time Records). These records apparently reveal that James Island failed to remit $12,354.76 in unpaid fringe contributions. Docket No. 17 at 7. On July 10, 2014, Plaintiffs filed this action after Defendants refused to pay delinquent amounts allegedly due and owed, as requested by the Trust Funds. *See* Docket No. 1 at ¶¶ 16-17. The Trust Funds now request the Court grant them the following relief: (1) $12,354.76 in unpaid fringe benefits contributions as revealed by the Defendants' time records; (2) $2,470.85 in liquidated damages; (3) $1,509.99 in interest; (4) $6,747 in attorney's fees and costs relating to the prosecution of this action; and (5) an injunction ordering Defendants to permit auditors to come onto their premises and to submit to an audit of their financial records for the period from January 1, 2012, to the present date. The Trust Funds also ask the Court to hold James Island and Irving James jointly and severably liable for any monetary judgment issued.

## II.   DISCUSSION

A.   Adequacy of Service of Process

As a threshold matter in considering a motion for default judgment, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Fed. R. Civ. P. 4(h)(1) authorizes service upon a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of

1   process and – if the agent is one authorized by statute to receive service and the statute so requires –

2   by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1). Rule 4(h)(1) also states

3   that a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an

4   individual," which, in turn, allows for service "following state law for serving a summons in an

5   action brought in courts of general jurisdiction in the state where the district court is located or

6   where service is made." Fed. R. Civ. P. 4(e)(1).

7        Under California law, a summons and complaint may be served on a corporation by

8   delivering a copy of the documents to: (1) the person designated as agent for service under certain

9   provisions of the California Corporations Code: or (2) the "president or other head of the

10  corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a

11  general manager, or a person authorized by the corporation to receive service of process." Cal. Code

12  Civ. P. § 416.10(a), (b). A corporation may also be served under California law via "substituted

13  service." That is,

14        If a copy of the summons and complaint cannot with reasonable
          diligence be personally delivered to the person to be served, . . . a
15        summons may be served by leaving a copy of the summons and
          complaint at the person's dwelling house, usual place of abode, usual
16        place of business, or usual mailing address other than a United States
          Postal Service post office box, in the presence of a competent member
17        of the household or a person apparently in charge of his or her office,
          place of business, or usual mailing address other than a United States
18        Postal Service post office box, at least 18 years of age, who shall be
          informed of the contents thereof, and by thereafter mailing a copy of
19        the summons and of the complaint by first-class mail, postage prepaid
          to the person to be served at the place where a copy of the summons
20        and complaint were left.

21  Cal. Code Civ. P. § 415.20(b).

22        While substituted service is, as a general matter, an easier form of service compared to

23  personal delivery, it is not free of limitations. Before a party can resort to substituted service,

24  personal service must first be attempted with "reasonable diligence." California courts have held

25  that "[o]rdinarily, . . . two or three attempts at personal service at a proper place should fully satisfy

26  the requirement of reasonable diligence and allow substituted service to be made." *Bein v.*

27  *Brechtel–Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1390 (1992). Also, "[s]ervice must be made

28

**United States District Court**
For the Northern District of California

1  upon a person whose relationship to the person to be served makes it more likely than not that they

2  will deliver process to the named party." *Id*. at 1393 (internal quotation marks omitted).

3       The proof of service for the summons and the complaint indicate that the documents were

4  served via substitute service at James Island's principal place of business on July 21, 2014.  *See*

5  Docket No. 10.  Specifically, the documents were served on a Ms. Laura Doe, who the process

6  server described as the "Person in Charge of Office."  *Id*.  An affidavit of reasonable diligence states

7  that the process server previously attempted to serve Mr. James both at James Island's office, as well

8  as Mr. James' home.  *Id*.  The process server avers that he made six separate efforts at personal

9  service between July 15 and July 18.  *Id*.  Substituted service was also completed by mail on July

10 22, 2014, and the summons and complaint were mailed to James Island's business address.  *Id.*  The

11 efforts described above are sufficient under California law vis-a-vis substituted service, and

12 therefore the Court finds that service of process on Defendants was properly effectuated.

13 B.   Merits of Motion for Default Judgment

14       As noted above, the Clerk entered default against Defendants on August 26, 2014.  *See*

15 Docket No. 13.  After entry of default, a court may grant a default judgment on the merits of the

16 case.  *See* Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a

17 discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980).  A court may consider

18 the following factors in exercising such discretion:

19            (1) the possibility of prejudice to the plaintiff, (2) the merits of
             plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
20           the sum of money at stake in the action, (5) the possibility of a dispute
             concerning material facts, (6) whether the default was due to
21           excusable neglect, and (7) the strong policy underlying the Federal
             Rules of Civil Procedure favoring decisions on the merits.
22

23 *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered

24 in this case, the Court must construe as true all of "the factual allegations of the complaint, except

25 those relating to the amount of damages."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

26 (9th Cir. 1987).

27       The Court finds that the *Eitel* factors weigh in favor of granting default judgment.  For

28 example, as to the first factor, if the motion for default judgment were to be denied, then the Trust

**United States District Court**
For the Northern District of California

1   Funds would likely be prejudiced as they would be left without a remedy. *See Walters v.*

2   *Shaw/Guehnemann Corp.*, No. 03-cv-04058, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr.

3   15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy.

4   Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.

5   Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted,

6   Plaintiffs will likely be without other recourse for recovery.").

7       As for the fourth *Eitel* factor, the sum of money at stake in this action is appropriate for

8   resolution on default judgment, particularly because the total amount sought ($23,672.60) is

9   narrowly tailored to Defendants' specific misconduct. *See Pepsico*, 238 F. Supp. 2d at 1176 (stating

10  that "the court must consider the amount of money at stake in relation to the seriousness of

11  Defendant's conduct"); *see also Church Bros., LLC v. Garden of Eden Produce, LLC*, No. 11-cv-

12  04114, 2012 WL 1155656, at *3 (N.D. Cal. Apr. 5, 2012) ($212,259.21 deemed "modest" and "far

13  less than [the amount] contemplated by the court in *Eitel*"); *Cf. Eitel*, 782 F.2d at 1472 (dispute over

14  $2,900,000, when considered in light of disputed issues of material facts, supported the court's

15  decision not to enter judgment by default).

16      As to the fifth, sixth, and seventh *Eitel* factors, because Defendants have not filed an answer

17  to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning

18  material facts. Nor is there any indication that Defendants' default was due to excusable neglect, as

19  Plaintiffs adequately served the complaint and the motion for default judgment at Defendants'

20  business address. *See* Docket No. 10; Docket No. 17 at Proof of Service. And while public policy

21  favors decisions on the merits, *Eitel*, 782 F.2d at 1472, Defendants' choice not to defend this action

22  renders a decision on the merits "impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

23      The only remaining factors that warrant additional analysis are the second and third *Eitel*

24  factors – the merits of Trust Funds' substantive claims and the sufficiency of those claims. Plaintiffs

25  have provided evidence that Mr. James signed a Letter of Assent binding James Island to the terms

26  of the CBA and Trust Agreement. Martinez Decl., Ex. A. Both the CBA and Trust Agreement

27  provide that Defendants "shall make contributions" to the Trust Funds for "each hour worked by

28  each of its employees on work covered by [the CBA]." CBA at 15; Trust Agreement at Section 1.

**United States District Court**
For the Northern District of California

Plaintiffs' complaint alleges, and the Court must accept as true, *see TeleVideo Sys., Inc.*, 826 F.2d at 917, that Defendants have refused to pay delinquent contributions to the Trust Funds and failed to make contributions in a timely manner as required by the CBA and Trust Agreement. *See* Complaint at ¶¶ 16-18. Thus, Plaintiffs have successfully stated a claim for relief under ERISA and the LMRA. *See* 29 U.S.C. § 1145 (providing that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."); 29 U.S.C. § 1132(a)(3) (authorizing, *inter alia*, a fiduciary to bring a civil action to enforce an employer's § 1145 obligation).

The complaint further requests an injunction ordering Defendants to submit to an audit to determine additional amounts due or owed as required by the CBA and the Trust Agreement. Complaint at ¶ 28. "Where a Fund's trust documents, to which an employer has bound itself, specifically provide that Fund trustees can examine any of the employer's records, an employer must comply with such agreed upon obligations." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Ben. & Training Funds v. BDR Inc.*, No. 05-cv-1385, 2006 U.S. Dist. LEXIS 70967, at *9 (N.D.N.Y Sept. 29, 2006) (citing *Central States, Southeast & Southwest Pension Fund v. Central Transport, Inc.*, 472 U.S. 559 (1985)). The Trust Agreements herein provide that, "[u]pon notice in writing, the Employer must permit an authorized Trust representative to enter upon the premises of such Employer at a mutually agreeable time during regular business hours to examine and copy such records as may be necessary to determine whether the Employer is making full and prompt payment of all sums required to the Trust." Trust Agreement at Section 7. Thus, Plaintiffs have again successfully stated a claim for relief.

C.    Irving James' Personal Liability for Delinquent Contributions

Plaintiffs seek to hold Irving James personally liable for the contributions that James Island failed to remit to the Trust Funds. Typically, "individuals are not liable for corporate debt." *Sullivan v. Cox*, 78 F.3d 322, 325 (7th Cir. 1996) (explaining that the default rule in ERISA cases is that corporate owners are not personally liable for delinquent contributions); *see also Local 159,*

*342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 189 F.3d 473 (9th Cir. 1999) (unpublished table decision) (explaining that courts "have refused to impose personal liability on the sole shareholder of a corporate employer that has breached its obligations under the LMRA, except when the veil-piercing test has been satisfied").[6]  An exception may be made, however, "where individuals contractually accept responsibility for corporate liability, thus becoming employers obligated to make contributions."  *Sullivan*, 78 F.3d at 325 (internal quotation marks omitted); *see also Western Washing Painters Defined Contribution Pension Trust v. Western Industrial, Inc.*, No. C09-826-RSM, 2012 WL 3704993, at *18 (W.D. Wash. Aug. 27, 2012) (noting that courts "must enforce explicit and unambiguous clauses . . . to hold corporate officers personally liable for [] delinquent contributions and associated payments of the corporate employer").

Plaintiffs argue that Mr. James contractually agreed to be held personally liable for James Island Plastering's liabilities under the CBA.  Specifically, Plaintiffs argue personal liability is appropriate in this case because Mr. James signed a Letter of Assent binding himself to the CBA, and the CBA provides that "Any Employer who fails to pay contributions shall be *personally* liable under the Agreement for benefits due his employees."  CBA at 16 (emphasis added).

The Court was initially skeptical that Mr. James could be held personally liable under the above-provision of the CBA.  Notably, the "Employer" referred to in the relevant provision of the CBA is not Mr. James, but James Island Plastering, a corporation.  Yet "personal" liability of a corporation seems like a misnomer.  Thus, the scope and applicability of the "personal liability" clause of the CBA is ambiguous.  Where a personal liability clause is ambiguous, courts will typically construe such clauses consistently with the default rule of limited liability.  *See Bd. of Trustees of Pipe Trades Dist. Council No. 36 Health and Welfare Trust Fund v. Clifton Enterprises, Inc.*, No. 11-05447 JST (JSC), 2013 WL 2403573, at *5 (N.D. Cal. May 31, 2013) (acknowledging the general rule that corporate owners are not personally liable for corporate debts, and refusing to enforce personal liability provision in collective bargaining agreement that was "vague and overbroad").  As Magistrate Judge Corley has explained, courts have only enforced personal liability

---

[6] *See also First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba (Bancec)*, 462 U.S. 611, 625 (1983) ("Separate legal personality has been described as an almost indispensable aspect of the public corporation.").

United States District Court

For the Northern District of California

1    provisions in ERISA cases where those provisions "explicitly and unambiguously impose individual

2    liability on corporate officers."  *Id.*

3          Given the Court's initial doubt that Mr. James could be held personally liable under the

4    ambiguous language of the CBA, the Court permitted Plaintiffs to file a supplemental brief with any

5    evidence or legal authorities that would support the Trust Funds' position that Mr. James should be

6    held jointly and severably liable for James Island's unpaid fringe benefit contributions.  Plaintiffs'

7    filing has successfully erased the Court's doubt.  Specifically, Plaintiffs filed declarations from

8    bargaining representatives who represented both the Union and the employers' association (WACA)

9    when the personal liability clause at issue in the CBA was discussed.  Docket Nos. 22-1 (Robinson

10   Decl.) and 22-2 (Nunes Decl.).  Both the employers' representative and the Union representative

11   stated that it was the parties' mutual intent at the time of contract formation that the CBA

12   "personally bind the owner of a business entity, should the employer fail to make required

13   contributions to the Trust Funds."  Nunes Decl. at ¶ 4.  A court may turn to such extrinsic evidence

14   to shed light on ambiguous contractual terms, *see Wolf v. Superior Ct.*, 114 Cal. App. 4th 1343,

15   1351 (2004),[7] and "great weight is given to the contemporaneous construction of the contract by the

16   parties themselves prior to the time controversy over its meaning arose."  *Lix v. Edwards*, 82 Cal.

17   App. 3d 573, 579 (1978).[8]  Here, Plaintiffs have provided highly relevant extrinsic evidence from

18   both parties to the CBA regarding the meaning of the personal liability clause – namely that the

19   clause was intended to bind individuals like Mr. James.  The Court is satisfied by this evidence, and

20   therefore finds that Mr. James contractually promised to be held "personally liable under the

21   Agreement for benefits due his employees."  CBA at 16.

22   D.    Damages and Other Relief

23         Because the Court concludes that default judgment is warranted, it must determine what

24   damages or other relief is appropriate.  Plaintiffs have the burden of "proving up" their damages or

25   the need for other requested relief.  *See Board of Trustees of the Boilermaker Vacation Trust v.*

---

26   [7] *See also F.B.T Productions, LLC v. Aftermath Records*, 827 F. Supp. 2d 1092, 1106 (C.D.
27   Cal. 2011).

28   [8] It appears the CBA – which applies solely to employers located in certain Northern
California counties – is governed by California law.  *See* CBA at 1.

United States District Court

For the Northern District of California

1   *Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005) ("Plaintiff has the burden of proving

2   damages through testimony or written affidavit.").  Under 29 U.S.C. § 1132(g)(2), a court shall

3   award a fiduciary who prevails in a § 1145 claim (A) the unpaid contributions; (B) interest on the

4   unpaid contributions; (C) an amount equal to the greater of- (i) the interest on the unpaid

5   contributions, or (ii) liquidated damages as specified in the plan (generally not to exceed 20 percent

6   of the unpaid contributions); (D) reasonable attorney's fees and costs; and (E) other appropriate

7   legal or equitable relief.  *See* 29 U.S.C. § 1132(g)(2).

8       In their motion for default judgment, the Trust Funds seek to recover all outstanding

9   contributions due and owing, interest and liquidated damages, and attorney's fees and costs.  The

10  Trust Funds also request an injunction requiring Defendants to submit to an audit of their books and

11  records for the period from January 1, 2012, to present.

12       1.      <u>Unpaid Contributions, Liquidated Damages, and Interest</u>

13       The Trust Funds assert that for the months of October 2012, November 2012, January 2013,

14  March 2013, and April 2013, Defendants failed to make $12,354.76 in required contributions to the

15  Trust Funds.  *See* Docket No. 17 at 7.  In support of this assertion, the Trust Funds have filed time

16  sheets for these months that were provided to the Trust Funds by Defendants.  Martinez Decl., Ex.

17  D.  Based on these self-reported time sheets, the Trusts Funds determined that Defendants had not

18  submitted benefit contributions to the Trust Funds for 473 hours of covered work.  *See id.*  The time

19  sheets also provide for a contribution rate of $26.12 per hour.  *Id.*; *see also* CBA at 15 (listing per

20  hour contribution rates per trust fund). Based on the evidence provided, the Court finds that the

21  Trust Funds have met their burden of proof regarding the amount of unpaid contributions for the

22  relevant time periods – namely $12,354.76 (*i.e.*, 473 hours multiplied by the $26.12 hourly rate).

23       The Trust Agreement also contains a provision allowing for the assessment of liquidated

24  damages of "twenty percent (20%) of the unpaid amount or twenty dollars ($20.00), whichever is

25  the greater."  *See* Trust Agreement at Section 6.  Under Ninth Circuit law, an award of liquidated

26  damages under § 1132(g)(2) is "mandatory and not discretionary."  *Operating Engineers Pension*

27  *Trust v. Beck Engineering & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984).

28

United States District Court

For the Northern District of California

The Trust Funds seek $2,470.85 in liquidated damages.  Ms. Martinez provided a chart in her declaration explaining the figure sought, which is 20% of the principal amounts owed by Defendants for the relevant periods.  Martinez Decl. ¶ 9.  The Trust Funds also seek $1,509.99 in interest.[9]  Again, Ms. Martinez provided a chart that shows how this figure was calculated – namely by applying a 5.25% annual interest rate to the outstanding amount of contributions due and owing during the relevant time period.  *Id.*  The Court finds that the Trust Funds have met their burden as to these claims.  Consequently, the Court awards total damages to the Trust Funds in the amount of $16,335.60.[10]

> 2.   <u>Injunctive Relief</u>

Plaintiffs also request an injunction directing Defendants to submit to an audit of its financial records for the period January 1, 2012, through the present.  Specifically, the Trust Funds require that Defendants be required to "permit an authorized Trust representative to enter upon the premises of such Employer at a mutually agreeable time during regular business hours to examine and copy such records as may be necessary to determine whether the Employer is making full and prompt payment of all sums required to the Trust."  Trust Agreement at Section 7.

The Trust Funds' requested injunctive relief is appropriate under ERISA to the extent the audit is tailored to the purpose of verifying that required contributions have (or have not) been paid.  *See International Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 31 (D.D.C. 2002) ("ERISA authorizes the court to provide for other legal or equitable relief as the court deems appropriate [under 29 U.S.C. § 1132(g)(2)(E)].  This relief can include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records.").  Accordingly, the Court grants the Trust Funds's claim for injunctive relief.  Defendants are ordered to: permit an auditor designated by the Trust Funds to enter upon its premises during

---

[9] The Trust Agreement provides that compound interest shall accrue on all unpaid contributions at a "rate of two (2%) percent above the prime rate set by Bank of America."  Trust Agreement at Section 9.  Trust Funds provided evidence that the relevant prime rate set by Bank of America was 3.25%, and thus the applicable interest rate to apply here is 5.25%.  Martinez Decl., Ex. C (Bank of American rate structure).  Although the Trust Funds appear to be entitled to compound interest, they seek only simple interest here.  Docket No. 17 at 8.

[10] This amount reflects the full amount of the unpaid contributions ($12,354.76) plus the full amount of the requested liquidated damages ($2,470.85) and interest ($1,509.99).

**United States District Court**
For the Northern District of California

business hours, and at a reasonable time or times, to examine and copy books, records, papers or reports of Defendants to determine whether they are making full and prompt payment of all sums required to be paid to the Trust Funds at issue.

### 3. Attorneys' Fees and Costs

The Trust Funds finally request that they be awarded their attorneys' fees and costs incurred in litigating this lawsuit. Specifically, the Trust Funds ask for $6,747 in attorneys' fees and $589.80 in costs. *See* Docket No. 17-5 (Declaration of Wan Yan Ling) at ¶¶ 10-11.

It is clear that costs and fees incurred by the Trust Funds are recoverable under ERISA. Section 502(g)(2) of ERISA, codified at 29 U.S.C. § 1132(g)(2), "makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions." *Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983). It is also "well-settled that the award of attorneys' fees is a matter within the discretion of the trial court, and that an award of attorneys' fees cannot be disturbed on appeal, absent a showing of abuse of discretion." *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1116 (9th Cir. 1979).

Having reviewed Plaintiffs' attorneys' billing records in detail, the Court finds that spending 34.6 hours on this case was both reasonable in light of the relative simplicity of this matter, as well as necessary to its effective prosecution. *See* Ling Decl. at ¶ 9; *see also The Bd. of Trustees v. Charles B. Harding Construction, Inc.*, No. C-14-1140 EMC, 2014 WL 7206890, at *6 (N.D. Cal. Dec. 18, 2014) (finding that 39 hours of billable time to prosecute ERISA default judgment action was reasonable). Further, the Court finds that the hourly rate charged by the attorneys ($195 per hour) is more than reasonable in this legal market for attorneys of similar skill and experience. *See* Lind Decl. at ¶ 9; *Charles B. Harding Construction*, 2014 WL 7206890, at *6 (finding that rates between $275 and $325 an hour are reasonable in this market for prosecution of ERISA collection action). Therefore, the Court awards the requested amount ($6,747) of attorneys fees in full.

Plaintiffs also seek an award of $589.80 in costs. Ling Decl at ¶ 11. Section 1132(g)(2) specifies that both "reasonable attorney's fees *and costs* of the action" are "to be paid by the defendant." *Id*. (emphasis added). The Court has reviewed Plaintiffs' accounting of their costs in this matter (e.g., filing fees and service-of-process fees), and finds that all costs claimed are those

**United States District Court**
For the Northern District of California

1  "customarily billed separately in [this legal] market" and are thus "recoverable as 'reasonable

2  attorney's fees' under 29 U.S.C. § 1132(g)(2)(D)."  *Trustees of Const. Indus. & Laborers Health &*

3  *Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006).  Therefore, the Court

4  awards Plaintiffs $589.80 in costs, bringing the total fees and cost award in this matter to $7,336.80.

5  **III.**   <u>**CONCLUSION**</u>

6  The Court **GRANTS** the Trust Funds' motion for default judgment in the amount of

7  $16,335.60, attorneys' fees in the amount of $6,747.00, and costs in the amount of $589.80.  The

8  Court finds that Mr. James is jointly and severably liable with James Island Plastering Inc., for this

9  judgment.

10  The Court also **GRANTS** the Trust Funds' request for injunctive relief, and orders

11  Defendants to permit an auditor designated by the Trust Funds to enter upon their premises during

12  business hours, and at a reasonable time or times, to examine and copy books, records, papers or

13  reports of Defendants to determine whether they are making full and prompt payment of all sums

14  required to be paid to the Trust Funds at issue.

15  Plaintiffs shall serve this Order on Defendants and shall file a proof of service with the Court

16  within seven (7) days from the date of this Order.

17  This order disposes of Docket No. 17.

19  IT IS SO ORDERED.

21  Dated:  March 6, 2015

22  _____
   EDWARD M. CHEN
23  United States District Judge

13